1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9  VICTOR TOVAR,                                    1:11-cv-01246-AWI-BAM (HC)

10                    Petitioner,                   FINDINGS AND RECOMMENDATION
                                                    REGARDING PETITION FOR WRIT OF
11       v.                                         HABEAS CORPUS

12                                                  [Doc. 7]
    ON HABEAS CORPUS,
13
                      Respondent.
14  _____/

15
16       Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28

17  U.S.C. § 2254.

18                                    BACKGROUND

19       On September 26, 2007, the Tulare County District Attorney filed an information

20  charging Petitioner in counts I through IV with attempted murder (Cal. Penal Code[1] §§

21  664/187(a)) and in count V with shooting at an inhabited dwelling (§ 246).  It was alleged as to

22  counts I through IV that the attempted murders were willful, deliberate, and premeditated within

23  the meaning of section 664(a).  It was also alleged as to counts I through V that the crimes were

24  committed for the benefit of, at the direction of, or in association with a criminal street gang

25  within the meaning of section 186.22(b).  It was further alleged as to counts I through IV that a

26  principal personally and intentionally used and discharged a firearm within the meaning of

27  section 12022.53(b), (c),

28
    _____
    [1] All further statutory references are to the California Penal Code unless otherwise indicated.

                                          1

1

2    and (e)(1).  It was specifically alleged as to counts I through IV that Petitioner personally and

3    intentionally discharged a firearm within the meaning of section 12022.53(c) and (e)(1).

4         On October 1, 2007, Petitioner pled not guilty to all the charges and denied the

5    allegations.

6         Following a jury trial, Petitioner was found guilty of counts I, II, and V, but not guilty on

7    counts III and IV.  The jury found all of the allegations as to counts I, II, and V to be true except

8    that it found the premeditation allegation as to count II to be not true.

9         Petitioner was sentenced to 37 years in state prison on count II.  Petitioner was sentenced

10   to 15 years to life plus 20 years on count I, to be served concurrently with count II.  Petitioner

11   was sentenced to 15 years to life on count V, to be served concurrently with count II.

12        The California Court of Appeal, Fifth Appellate District, affirmed the judgment on April

13   19, 2010.  On August 11, 2010, the California Supreme Court denied the petition for review.

14        On March 1, 2010, Petitioner filed a habeas corpus petition in the Tulare County Superior

15   Court.  The petition was denied in a reasoned decision on March 3, 2010.  On April 2, 2010,

16   Petitioner filed a habeas corpus petition in the California Court of Appeal, Fifth Appellate

17   District.  The petition was denied without comment.  On June 4, 2010, Petitioner filed a habeas

18   corpus petition in the California Supreme Court.  The petition was denied without comment on

19   January 12, 2011.

20        Petitioner filed the instant federal petition for writ of habeas corpus on July 29, 2011.

21   The action is proceeding on Petitioner's first amended petition filed September 14, 2011.

22        Respondent filed an answer to the amended petition on November 16, 2011.  Petitioner

23   filed a traverse on January 31, 2012.

24                    STATEMENT OF FACTS[2]

25        At approximately 11:35 p.m. on July 17, 2007, J.G. and his brother, A.G.
     were asleep in a bedroom at their residence in Visalia.  The lights were off and the
26   window closest to J.G. was open but the blinds and curtains were closed.  Their

27   ────────────────

28        [2] The Statement of Facts is taken from the opinion of the California Court of Appeal, Fifth Appellate
     District on direct review, which is presumed correct.  28 U.S.C. §§ 2254(d), (e)(1).

parents, V.G. and T.G., were asleep in the living room of the house.  J.G. was suddenly awakened by the sound of five gunshots.  No one was hit with a bullet, although the boys' father, V.G., felt wood and debris falling on him and he located one of the bullets underneath a blanket he was using for a bed.

Just prior to the shooting, a female neighbor looked outside and observed the actions of two men.  The two men moved quickly toward a window of the house across the street, and one of the men aimed a gun and shot it at a downward angle once into the window.  The gun was about a foot from the window when the shot was fired.  Then the two men ran around a corner to another window of the house where the same man shot into that window twice from close range, again aiming downward.  The neighbor's husband then took over the watching.  He witnessed the two men fire an additional two shots toward the house from a carport area.  He noticed that one of the men was wearing a light gray or white T-shirt.  He called 911 and shortly thereafter, [Petitioner] and the other man, B.S., were arrested.

Senior identification technician James Potts confirmed that the bullets were fired from [Petitioner's] gun.  The physical evidence indicated that one bullet came through the first (east) window, and three bullets came through the window frame and blinds of the second (south) window.  The technician believed one of three bullets that came through the south window was shot from the carport area.  Three shell casings were found outside the windows, and another was found in the carport area approximately 130 feet away from the residence.  Shoe prints were found in the dirt near the residence that were consistent with the soles of [Petitioner's] and B.S.'s shoes.

After [Petitioner's] arrest, he was interviewed by Detective Curtis Brown.  In that interview, [Petitioner] confessed to doing the shooting, admitted he was a member of the Visa Boys, [FN 1] and indicated the shooting was "[p]ayback" against a Sureno.  [Petitioner] claimed he did not know what room he shot into, or how many people were in the residence, but he assumed that "he" was there.  He did not identify who "he" was, except that he was a Sureno.  When [Petitioner] was asked if he wanted to kill him, [Petitioner] said, "I don't know," but added that he was "mad" because someone shot his "homie" the other day in a gang shooting. [FN 2]  He admitted he did not care whether the Surenos in the house lived or died.

FN 1. Detective Brown explained that the Visa Boys was a clique or subset of the Norteno gang.

FN 2. Detective Brown testified that the "homie" [Petitioner] referred to was a Norteno gang member who had been recently shot in a drive-by shooting.

Further evidence was presented at trial on the issue of the gang involvement of both [Petitioner] and J.G., confirming that J.G. was a member of, or at least in close association with, the Southern or "Sureno" criminal gang while [Petitioner] was a member of the rival Northern or "Norteno" criminal gang.  A number of prior incidents were indicative of such gang involvement.  For example, on October 5, 2005, J.G. and [Petitioner] and two other boys came up to J.G. and one of them asked J.G. if he was a "Scrapa," which is a derogatory term used by Nortenos to insult Surenos.  J.G. admitted that he hung out with Surenos, not Nortenos, but denied that he was a Sureno member.  Nevertheless, he fought [Petitioner] after being called a "Scrapa."

3

On February 17, 2007, J.G. was standing in front of a residence with a group of Surenos when Nortenos drove by and started shooting. J.G. was shot in the leg. When police arrived, J.G. described the shooters as "Busters," a derogatory term used by Surenos to describe Nortenos. J.G. believed that he had been targeted by the Norteno gang. In May or June of 2007, a neighbor witnessed a group of 20 to 40 yelling at J.G. to come out of the house and fight them. The neighbor heard the Norteno mob use the term "[s]crap." J.G. testified that he was not home at the time. J.G.'s father, V.G., did not recall the incident.

Officer Steve Howerton was assigned to Sequoia High School in 2007, when [Petitioner] went to school there. Officer Howerton testified based on his observations that [Petitioner] was a Norteno gang member or associate at that time. [Petitioner] hung out exclusively with the other known Nortenos, and the only time Officer Howerton saw [Petitioner] next to a Sureno was when there was a confrontation brewing that would lead to a fight. [Petitioner] used the term "[s]crap" on more than one occasions, and admitted his allegiance to the Nortenos and his hatred toward the Surenos.

Officer Luma Fahoum testified as an expert on criminal gangs in Visalia. She explained that the Visa Boys, the group [Petitioner] identified himself with, was a clique that was part of the Norteno gang. She explained further that Nortenos and Surenos hate each other, that no insult between the two gangs goes unanswered, and that they are engaged in an ongoing war of violence and retaliation that includes murder and attempted murder, which are often accomplished through such means as shooting a rival gang member on the streets, drive-by shootings, and shootings at a rival gang member's inhabited house. Officer Fahoum was of the opinion that [Petitioner] was a Norteno gang member and that the shooting in this case was gang related. Her opinion was based, in part, on the prior incident with J.G. in which [Petitioner] approached J.G. with other gang members and used the term "[s]crap," and on the interview of [Petitioner] by Detective Brown (following [Petitioner]'s arrest for the July 7, 2007 shooting) in which [Petitioner] used the term "[s]crap, confessed to doing the shooting, admitted his Visa Boys affiliation and indicated he sought "payback" against a Sureno for a shooting that had occurred the week before. She also noted that [Petitioner] admitted to being a Norteno gang member when he was previously booked at a juvenile detention facility on March 2, 2007.

[Petitioner] took the stand in his own defense. He testified that on the night of the shooting he was high on alcohol and marijuana and that he did not really know what he was doing or why he started shooting at the house, although he was "mad" because he could not get more beer and because his girlfriend was not able to come be with him. He claimed he did not know who lived in the house or if anyone lived there. He testified that Visa Boys was not a gang or associated with a gang, but was just a group that he and his friends made up. He said that although he hung out with Nortenos, he did not consider himself a gang member. In support of [Petitioner]'s defense, two relatives testified that [Petitioner] was intoxicated that night. Also, a defense expert testified that, in his opinion, [Petitioner] did not fit the profile of a Norteno gang member or associate, and that Visa Boys was not a gang but merely a way of identifying where the group was from.

1  (LD³ 4, at 2-6.)

2  <u>DISCUSSION</u>

3  I.  <u>Jurisdiction</u>

4      Relief by way of a petition for writ of habeas corpus extends to a person in custody

5  pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

6  or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>,

7  529 U.S. 362, 375 (2000).  Petitioner asserts that he suffered violations of his rights as

8  guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Tulare County

9  Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 28

10  U.S.C. § 2241(d).

11      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

12  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

13  enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499

14  (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (quoting <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th

15  Cir. 1996).  The instant petition was filed after the enactment of the AEDPA and is therefore

16  governed by its provisions.

17  II.  <u>Standard of Review</u>

18      Where a petitioner files his federal habeas petition after the effective date of the Anti-

19  Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that

20  the state court's adjudication of his claim:

21      (1) resulted in a decision that was contrary to, or involved an unreasonable
        application of, clearly established Federal law, as determined by the Supreme
22      Court of the United States;
        or
23      (2) resulted in a decision that was based on an unreasonable determination of the
        facts in light of the evidence presented in the State court proceeding.
24

25  28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d)

26  unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly

27

28
        ³ "LD" refers to the Lodged Documents submitted by Respondent on November 18, 2011.  ECF No. 15.

1   established in the holdings of [the Supreme] Court." <u>Harrington v. Richter</u>, __ U.S. __, 131 S.Ct.

2   770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and <u>Williams v. Taylor</u>, 539 U.S. 362, 412

3   (2000). Habeas relief is also available if the state court's decision "involved an unreasonable

4   application" of clearly established federal law, or "was based on an unreasonable determination

5   of the facts" in light of the record before the state court. <u>Richter</u>, 131 S.Ct. 785 (citing 28 U.S.C.

6   § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to

7   the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant

8   state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412. Therefore, a "specific" legal rule

9   may not be inferred from Supreme Court precedent, merely because such rule might be logical

10  given that precedent. Rather, the Supreme Court case itself must have "squarely" established that

11  specific legal rule. <u>Richter</u>, 131 S.Ct. at 786; <u>Knowles v. Mirzayance</u>, __ U.S. __, 129 S.Ct.

12  1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule

13  to the "context" in which the Petitioner's claim falls. <u>Premo v. Moore</u>, __ U.S. __, 131 S.Ct.

14  733, 737 (2011). Under § 2254(d)(1), review is limited to the record that was before the state

15  court adjudicated the claim on the merits. <u>Cullen v. Pinholster</u>, __ U.S. __, 131 S.Ct. 1388, 1398

16  (2011). "A state court's determination that a claim lacks merits precludes federal habeas relief so

17  long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

18  <u>Richter</u>, 131 S.Ct. at 786.

19        "Factual determinations by state courts are presumed correct absent clear and convincing

20  evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court

21  and based on a factual determination will not be overturned on factual grounds unless objectively

22  unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."

23  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254

24  apply to findings of historical or pure fact, not mixed questions of fact and law. <u>See</u> <u>Lambert v.</u>

25  <u>Blodgett</u>, 393 F.3d 943, 976-77 (2004).

26        Courts further review the last reasoned state court opinion. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501

27  U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an

28  explanation, the habeas petitioner's burden still must be met by showing there was no reasonable

1  basis for the state court to deny relief." <u>Richter</u>, 131 S.Ct. at 784.

2  III.  <u>Ineffective Assistance of Counsel</u>

3        Petitioner contends that defense counsel was ineffective for failing to investigate and file a

4  motion to suppress statements he made to law enforcement.  He specifically contends his

5  statements were coerced and obtained in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

6        A.      <u>Procedural Default</u>

7        Respondent argues that this claim is barred because it is procedurally defaulted.  Petitioner

8  presented this claim for the first time to the Tulare County Superior Court-the last reasoned

9  decision to address the claim.[4]  The Tulare County Superior Court found this claim to be barred

10  because it was not raised in a timely manner.

11        The Tulare County Superior Court specifically stated, in part:

12        Petitioner [has] failed to raise the issues raised in his writ in a timely
manner.  There is no statute of limitations for raising a habeas claim.  Rather, a

13  claim should be asserted in a habeas corpus petition "as promptly as the
circumstances allow." (*In re Clark* (1993) 5 Cal.4th 750, 765 n.5.)  Generally, a

14  court will not consider an issue on habeas review if the claim was not raised in a
timely manner.  (*Clark*, *supra*.)  Delay is measured from the time the petitioner

15  knew, or reasonably should have known, of the information offered in support of
the claim and the legal basis for the claim.  (*In re Robbins* (1998) 18 Cal.4th 770,

16  780.)  A court will not consider the merits of a delayed petition unless the
petitioner provides an adequate justification for his failure to raise the claims in a

17  timely filed petition, or demonstrates that a fundamental miscarriage of justice has
occurred as a result of the proceedings leading to the conviction or sentence.

18  (*Clark*, 5 Cal.4th at pp. 797-798).

19        Petitioner was sentenced on November 6, 2008 [and it] has been almost
two years since that time and now at this late date the petitioner files additional

20  claims.  The petitioner was clearly aware of the claims being made in his writ at an
early stage of the proceedings yet he waits two years to raise them.  The petitioner

21  has raised no reasonable explanation for the delay.

22

23  (Ex. A, to Answer at 1-2.)

24        Federal courts "will not review a question of federal law decided by a state court if the

25  decision of that court rests on a state law ground that is independent of the federal question and

26  adequate to support the judgment."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 729, 111 S.Ct. 2546

27  (1991); <u>LaCrosse v. Kernan</u>, 244 F.3d 702, 704 (9th Cir. 2001).  If the court finds an independent

28        [4] <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-805 (1991).

and adequate state procedural ground, "federal habeas review is barred unless the prisoner can

demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure

to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9

F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750; Park v. California, 202 F.3d 1146,

1150 (9th Cir. 2000).

"For a state procedural rule to be 'independent,' the state law basis for the decision must

not be interwoven with federal law." LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001)

(citing Michigan v. Long, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469 (1983)); Morales v. Calderon,

85 F.3d 1387, 1393 (9th Cir. 1996) ("Federal habeas review is not barred if the state decision

'fairly appears to rest primarily on federal law, or to be interwoven with federal law.'" (quoting

Coleman, 501 U.S. at 735, 111 S.Ct. 2456)).  "A state law is so interwoven if 'the state has made

application of the procedural bar depend on an antecedent ruling on federal law [such as] the

determination of whether federal constitutional error has been committed.'" Park, 202 F.3d at

1152 (quoting Ake v. Oklahoma, 470 U.S. 68, 75, 105 S.Ct. 1087 (1985)).

To be deemed adequate, the state law ground for decision must be well-established and

consistently applied. Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999) ("A state procedural

rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly

followed' at the time it was applied by the state court.")(quoting Ford v. Georgia, 498 U.S. 411,

424, 111 S.Ct. 850 (1991)).  Although a state court's exercise of judicial discretion will not

necessarily render a rule inadequate, the discretion must entail "'the exercise of judgment

according to standards that, at least over time, can become known and understood within

reasonable operating limits.'" Id. at 377 (quoting Morales, 85 F.3d at 1392).  In Walker v. Martin,

131 S.Ct. 1120, 1127 (2011), the Supreme Court unanimously held that the practice of California

courts to deny habeas petitions as untimely is an adequate and independent state procedural

ground that bars relief in federal court.  Usually, California courts will "signal that a habeas

petition is denied as untimely" by citing the controlling decisions, i.e. In re Clark, 5 Cal.4th 750

(1993) and In re Robbins, 18 Cal.4th 770 (1998).  Pursuant to Walker, the state rule set forth in

Clark and Robbins is "firmly established" and "regularly followed" by the state court.  Walker,

8

1    131 S.Ct. at 1128-1130.

2         As a limited exception to the procedural bar doctrine, a federal court may still consider the

3    claim if the petitioner shows: (1) good cause for his or her failure to exhaust the claim and

4    prejudice from the alleged constitutional violation; or (2) a fundamental miscarriage of justice.

5    Cooper v. Neven, 641 F.3d 322, 327 (9th Cir. 2011).  The miscarriage of justice prong of this test

6    is synonymous with a claim of actual factual innocence to the offense of conviction.  Sawyer v.

7    Whitley, 505 U.S. 333, 339, 340 (1992).

8         The state court found that because Petitioner delayed nearly two years between the day that

9    he was sentenced (November 6, 2008) and the day he filed the state petition (March 1, 2010),

10   raising the issue of ineffective assistance of counsel for the first time, his claim was untimely.

11   The state court also determined that Petitioner was well aware of the underlying basis for his

12   ineffective assistance of trial counsel claim at an early stage of the proceeding but simply failed to

13   raise it.  Moreover, Petitioner did not provide any justification for the delay.  Therefore, this claim

14   is procedurally barred from review.[5]  In any event, for the reasons discussed below, the claim fails

15   on the merits.

16        B.    Merits of Claim

17        The Tulare County Superior Court also found the claim to be without merit stating:

18            Regarding the ineffective assistance of counsel claim, the petitioner has
             failed to establish the basic requirements for success on that claim.  A defendant is
19           entitled to a new trial if he received ineffective assistance of counsel at trial.
             (*People v. Lagunas* (1994) 8 Cal.4th 1030, 1036.)  "Establishing a claim of
20           ineffective assistance of counsel requires the defendant to demonstrate (1)
             counsel's performance was deficient in that it fell below an objective standard of
21           reasonableness under prevailing professional norms, and (2) counsel's deficient
             representation prejudiced the defendant, i.e., there is a "reasonable probability"
22           that, but for counsel's failings, defendant would have obtained a more favorable
             result.
23
24            The court in *People v. Dennis* (1998) 17 Cal.4th 468, 540-541 stated: "Our
             review is deferential; we make every effort to avoid the distorting effects of
25           hindsight and to evaluate counsel's conduct from counsel's perspective at the time.
             A court must indulge a strong presumption that counsel's acts were within the wide
26           range of reasonable professional assistance.

27

28        [5] The fact that the state court also reached the merits of the petition does not override the procedural default.
     Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Sochor v. Florida, 504 U.S. 527, 534 (1992); Bennett v. Mueller,
     322 F.3d 573, 580 (9th Cir. 2003).

///

Petitioner claims he was not advised of his Miranda rights and his attorney failed to raise that issue during the pre-trial hearings.  His claim is not supported by the evidence.

On July 17, 2007 officer Dirk Alfano was on patrol in the city of Visalia, California.  He received a vehicle description which was related to a drive by shooting.  Officer Alfano observed a vehicle which matched the description and he effected a felony stop.

The petitioner got out of the vehicle holding a hand gun and fled.  When [the officer] finally caught the petitioner [he] did not have the gun in his possession. Officer Alfano asked the petitioner what he did with the handgun as it could be found by a child and result in that child's injury or death.  The petitioner led the officer to the handguns location.  No further questioning was done by officer Alfano.

Later that same day the petitioner was questioned by Officer Curtis Brown. Prior to any questions being asked the petitioner was advised of his Miranda rights and acknowledged his understanding and waiver of those rights.

The exigent circumstances of finding the hand gun which the petitioner had been seen with by Officer Alfano justified a request that the petitioner lead the officer to the handgun.  There was no question in the officer's mind that the petitioner had gotten out of the vehicle with the gun in his hand.  The officer was justified in asking him where the gun was.  In addition, that question amounting to nothing more than a preliminary investigation and therefore no Miranda warning was required at that time.

There has been no showing of any ineffective assistance of counsel or a denial of any of the petitioner's constitutional rights.

Accordingly, petitioner's Petition for Writ of Habeas Corpus is denied.

(Ex. A, to Answer at 1-3.)

Here, the state court did not commit constitutional error by finding that Petitioner's response disclosing the location of the gun was admissible under the public safety exception to Miranda.  In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that certain warnings must be given before a suspect's statement made during custodial interrogation can be admitted at trial.  In order for Miranda to apply, two elements must both exist simultaneously: custody and interrogation.  Berkemer v. McCarty, 468 U.S. 420, 429 (1984); Rhode Island v. Innis, 446 U.S. 291, 300 (1980); Schneckloth v. Bustamonte, 412 U.S. 218, 247 (1973).

In New York v. Quarles, 467 U.S. 649 (1984), the United States Supreme Court created a "public safety" exception to the Miranda rule, which holds that Miranda warnings need not be

10

1  given when "police officers ask questions reasonably prompted by a concern for the public

2  safety." Id. at 656.  The rationale for this rule is "the need for answers to questions in a situation

3  posing a threat to the public safety outweighs the need for the prophylactic rule protecting the

4  Fifth Amendment's privilege against self-incrimination." Id. at 657.  In Quarles, officers were in

5  search of a rape suspect who was allegedly in possession of a gun.  Id. at 651-652.  After a short

6  chase in a supermarket, the officer apprehended the suspect and noticed the suspect's gun holster

7  was empty and asked him where the gun was.  Id. at 652.  The suspect responded and said "the

8  gun is over there."  The officer retrieved the gun, placed the suspect under arrest, and read him his

9  Miranda rights.  The Supreme Court held under these factual circumstances, the question about

10  the whereabouts of the gun did not violate Miranda and reasoned:

11
12
13
14
> The police in this case, in the very act of apprehending a suspect, were confronted
> with the immediate necessity of ascertaining the whereabouts of a gun which they
> had every reason to believe the suspect had just removed from his empty holster
> and discarded in the supermarket.  So long as the gun was concealed somewhere in
> the supermarket, with its actual whereabouts unknown, it obviously posed more
> than one danger to the public safety: an accomplice might make use of it, a
> customer or employee might later come upon it.

15  Id. at 657.

16  The "public safety exception" allows an officer to question a suspect without Miranda

17  warnings if it "relate[s] to an objectively reasonable need to protect the police or the public from

18  any immediate danger...." Id. at 659 n.8.  The Supreme Court discussed the extent of the public

19  safety exception, stating:

20
21
22
23
24
> ... we recognize here the importance of a workable rule "to guide police officers,
> who have only limited time and expertise to reflect on and balance the social and
> individual interests involved in the specific circumstances they confront."
> [Citations omitted].  But as we have pointed out, we believe that the exception
> which we recognize today lessens the necessity of that on-the-scene balancing
> process.  The exception will not be difficult for police officers to apply because in
> each case it will be circumscribed by the exigency which justifies it.  We think
> police officers can and will distinguish almost instinctively between questions
> necessary to secure their own safety or the safety of the public and questions
> designed solely to elicit testimonial evidence from a suspect.

25

26  Id. at 658-659.

27  The present factual circumstances are equivalent to those present in Quarles.  Upon

28  approaching Petitioner, the officer knew Petitioner had discarded his gun on residential property

1   during the chase but was unaware of its location.  The abandoned gun posed a danger to the public

2   safety which necessitated an immediate need to question Petitioner about its location.  Thus,

3   <u>Miranda</u> warnings were not required prior to Officer Alfano's question about the location of the

4   gun.  Given these circumstances, the Superior Court's conclusion that Petitioner's statement fell

5   within the public safety exception to <u>Miranda</u> was neither contrary to, nor involved an

6   unreasonable application of, clearly established Federal law.

7   IV.   <u>Insufficient Evidence to Support Gang Enhancement</u>

8         Petitioner contends there was insufficient evidence to support the true finding on the gang

9   enhancement.

10        A.   <u>Procedural Default</u>

11        As with the prior claim, Respondent argues this claim has been procedurally defaulted and

12  is precluded from federal habeas corpus review.  For the same reasons explained above in Section

13  III, this claim has been procedurally defaulted and is precluded from federal habeas review.  In

14  any event, for the reasons explained below, the claim is without merit.

15        B.   <u>Analysis of Merits</u>

16        The Tulare County Superior Court also denied the claim on the merits, stating Petitioner

17  had "failed to state a basis for relief."  The state court's ruling is entitled to AEDPA deference.

18  Even if the denial is treated as a silent denial by the state court, it is still entitled to deference

19  under AEDPA.  <u>See</u> <u>Richter</u>, 131 S.Ct. at 784-785; <u>Delgado v. Lewis</u>, 223 F.3d 976, 981-982 (9th

20  Cir. 2000).

21        The law on insufficiency of the evidence claim is clearly established.  The United States

22  Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a

23  federal court must determine whether, viewing the evidence and the inferences to be drawn from

24  it in the light most favorable to the prosecution, any rational trier of fact could find the essential

25  elements of the crime beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).

26  Sufficiency claims are judged by the elements defined by state law.  <u>Id.</u> at 324, n. 16.

27        Here, the state court denial was not unreasonable.  There was substantial evidence from

28  which a rational trier of fact could have found that Petitioner committed the attempted murder

1   with the specific intent to promote, further, or assist a criminal street gang.  Officer Luma Fahoum

2   based her opinion that the crime was gang-related on her extensive knowledge of Visalia gangs,

3   the fact Petitioner's previous fight with the victim was gang-related, Petitioner's previous

4   admission that he was a gang member, and the fact the shooting was in relation for a prior gang-

5   related shooting that took place approximately a week before.  (RT 462-499.)

6          Other independent evidence supported the jury's finding.  Petitioner's previous fight with

7   the victim involved the use of the term "Scrapa," a derogatory term for opposing gang members.

8   The victim and Petitioner belonged to rival gangs.  The instant crime took place with a fellow

9   Norteno gang member.  Most damaging, Petitioner himself admitted that the shooting was for

10  retaliation and "payback" against the Surenos.  (RT 413, CT 309, 313.)  Petitioner's claim that the

11  expert's testimony is based on pure "speculation," "conjecture," "guess work," and "supposition,"

12  is not persuasive as it is the province of the jury to make credibility determinations and resolve

13  evidentiary conflicts, and a reviewing court must assume the jury resolved all conflicts in a

14  manner that supports the verdict.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (the

15  reviewing court "must respect the province of the jury to determine the credibility of witnesses,

16  resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that

17  the jury resolved all conflicts in a manner that supports the verdict").  Accordingly, the state

18  court's denial of this claim was not an unreasonable application of Jackson.

19                                    RECOMMENDATION

20         Based on the foregoing, it is HEREBY RECOMMENDED that:

21         1.     The instant petition for writ of habeas corpus be DENIED; and

22         2.     The Clerk of Court be directed to enter judgment in favor of Respondent.

23         This Findings and Recommendation is submitted to the assigned United States District

24  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

25  Local Rules of Practice for the United States District Court, Eastern District of California.  Within

26  thirty (30) days after being served with a copy, any party may file written objections with the court

27  and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate

28  Judge's Findings and Recommendation."  Replies to the objections shall be served and filed

1   within fourteen (14) days after service of the objections.  The Court will then review the

2   Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

3   failure to file objections within the specified time may waive the right to appeal the District

4   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5          IT IS SO ORDERED.

6   **Dated:**  __**February 21, 2012**__          ___**/s/ Barbara A. McAuliffe**___
                                        UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28